# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN DE LA TORRE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> acting commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | No. 13 C 2770 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian de la Torre ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his claim for continued Social Security Disability Insurance ("SSDI") benefits following a closed period of disability. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 24], and grants the Commissioner's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, [Doc. No. 33].

# BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY[1]

Plaintiff formerly worked as an elevator repairman. Unfortunately, he badly injured his left knee while carrying a heavy pipe on the job, resulting in a torn meniscus and major surgery. Plaintiff thus applied for SSDI benefits, alleging a disability onset date of April 28, 2008. After his application was denied initially and upon reconsideration, he requested and received a hearing before an Administrative Law Judge ("ALJ"), who issued a partially favorable decision and found that Plaintiff was disabled from April 28, 2008 through May 27, 2010.

In his opinion, the ALJ determined that Plaintiff suffered from the following severe impairments: left knee meniscal tear; reflex sympathetic dystrophy; and obesity. For the closed period of disability, the ALJ concluded that Plaintiff equaled Listing 1.02A (major joint dysfunction). After that period, however, the ALJ found that Plaintiff's condition had improved beyond the point of total disability. Accordingly, the ALJ proceeded to calculate Plaintiff's Residual Functional Capacity ("RFC") and found that he could perform the full range of sedentary work.

Next, the ALJ consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform his past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could perform his past work as an electrical component repairer, thus rendering him not disabled under the Social Security Act.

---

[1] The following facts are from the parties' submissions are undisputed unless otherwise noted.

# STANDARD OF REVIEW

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

In addition, in cases such as this, where an individual is determined to be disabled and entitled to benefits for a closed period, the Commissioner uses an

eight-step sequential process to determine whether the claimant's disability continues, which proceeds as follows:

> 1. Has the claimant engaged in any substantial gainful activity?
>
> 2. If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?
>
> 3. If not, has there been a medical improvement as shown by a decrease in medical severity?
>
> 4. Is the medical improvement related to the claimant's ability to do work?
>
> 5. If no to steps three and four, do any exceptions to medical improvement apply?
>
> 6. If yes to step four, are the claimant's current impairments severe in combination?
>
> 7. If the impairments are severe, can the claimant perform his past relevant work?
>
> 8. If not, can the claimant perform any other work?

20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *Phillips v. Astrue*, 601 F. Supp. 2d 1020, 1028 (N.D. Ill. 2009).

## II.     JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some

4

glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

A court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting that the ALJ (1) improperly analyzed the evidence pertaining to medical improvement, (2) violated the treating physician rule, and (3) illegitimately discredited Plaintiff's complaints of disabling pain. The Court will address each issue in turn.

### I. <u>The ALJ's Analysis of the Medical Evidence</u>

Plaintiff first contends that the ALJ erred by finding him "medically improved" as of May 27, 2010. "Medical improvement" is defined as "any decrease in the medical severity of [a claimant's] impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant] was disabled

5

or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). A finding of decreased medical severity must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments." *Id.*; *accord Blevins v. Astrue*, 451 F. App'x 583, 585 (7th Cir. 2011).

In that respect, the ALJ found that Plaintiff's condition had improved because virtually every medical source in this case found just that: improvement. For example, a May 27, 2010 report from Dr. Noren (an independent medical expert) indicates that Plaintiff reported experiencing only dull pain, that he was able to drive without issue, and that he could walk/stand for short periods of time. (*See* R. 484-87.) Combined with his diagnostic findings, which were consistent with Plaintiff's stated improvements, Dr. Noren thus concluded that Plaintiff could perform sedentary work — a notable change from his prior status as completely disabled. Moreover, the following month, two Consultative Examiners ("CEs") similarly found that Plaintiff could walk and perform sedentary work.[2] Accordingly, the ALJ reasonably concluded that by May 2010, Plaintiff was no longer extremely limited in his ability to walk because of a "medical improvement."

Plaintiff, however, attempts to diminish the value of these findings because his primary physician, Dr. Cole, had consistently noted that he could perform sedentary work before 2010. In Plaintiff's view, if he could perform sedentary work

---

[2] Plaintiff further argues that the ALJ did not rely on the CE findings in his opinion and therefore that the Commissioner cannot rely on them on appeal. Plaintiff is mistaken. True, the ALJ did not analyze the CE opinions under the heading of "medical improvement," but ALJ opinions must be read as a whole, Curvin v. Colvin, 778 F.3d 645, 649 (7th Cir. 2015), and in that light, it is clear that the ALJ indeed considered and relied upon the CE findings. (*See, e.g.,* R. at 70.)

6

pre-2010, then a finding that he could do so in May 2010 does not demonstrate medical improvement. But this argument rests on a faulty premise. The relevant comparison for determining "medical improvement" is not simply past versus present doctor's opinions. Rather, it "is the severity of the claimant's current medical condition versus the severity of the condition as of the disability onset date." *Lymperopulos v. Astrue,* No. 09 C 1388, 2010 U.S. Dist. LEXIS 25783, 2010 WL at *7 (N.D. Ill. Mar. 10, 2010). In this sense, Dr. Cole's reports actually undercut Plaintiff's argument, since they demonstrate marked improvement after the onset of Plaintiff's disability. The reports from Dr. Noren and the CEs, which are recent, comprehensive evaluations of Plaintiff's impairments, only further that conclusion. Therefore, the Court affirms the ALJ's finding of medical improvement.[3]

## II. <u>The Treating Physician Rule</u>

Plaintiff next asserts that the ALJ violated the treating physician rule by giving less-than controlling weight to Dr. Cole's opinion. The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5)

---

[3] Because this evidence is sufficient to ground the ALJ's conclusion, the Court declines to address Plaintiff's other contentions regarding the ALJ's reasons for finding medical improvement. Any errors, if they indeed exist, would be harmless.

7

the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527.

The gravamen of Plaintiff's argument is that the ALJ failed to analyze the above factors in weighing Dr. Cole's opinion. And in this small respect, the Court agrees. The ALJ's sole stated reason for discrediting Dr. Cole is that he had not physically examined Plaintiff since April 2010, whereas he opined in August 2010, four months later, that Plaintiff could not work. Given Dr. Cole's long-standing relationship with Plaintiff, and his intimate knowledge of Plaintiff's condition, the Court is unwilling to say that a four-month treatment gap undermines the value of his opinion.

Nonetheless, the Court finds this error to be harmless. The only part of Dr. Cole's findings that supports Plaintiff's position is the conclusion — contained in *one* of his reports — that Plaintiff cannot maintain full-time work. That conclusion, however, is not a "medical opinion" and therefore deserves no weight whatsoever. *See Johnson v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). Worse still, it is belied Dr. Cole's other reports, which indicate that Plaintiff can perform "exclusively seated" or sedentary work. (*See, e.g.,* Letter Dated 1/5/2011 [R. 676]) ("I would support the claim that work is not feasibly possible short of an exclusively seated job."); *see also* (R. 294, 301). Thus, when viewed as a whole, Dr. Cole's opinion supports, rather than undermines, the ALJ's ultimate conclusion that Plaintiff is

capable of sedentary work. As such, any error in analyzing the weight that should be accorded to Dr. Cole was harmless.[4]

### III. The ALJ's Credibility Finding

Lastly, Plaintiff challenges the ALJ's reasons for discrediting his claims of disabling pain. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

Here, Plaintiff claims the medical evidence shows that he is suffering from intense pain, which is unresponsive to treatment, and therefore that the ALJ's skepticism of his pain was unreasonable.[5] But the ALJ did not completely discredit Plaintiff's claims of pain; rather, he simply did not believe that Plaintiff's pain limited his functioning to the point of total disability. To support his findings, the ALJ noted numerous inconsistencies between Plaintiff's testimony and the record.

---

[4] Plaintiff also criticizes the ALJ's reliance on the CE who testified at the hearing, on the basis that the CE "failed to cite any medical evidence" to support his opinion. (Pl.'s Rep. Br. at 5.) This could not be further from the truth. The CE reviewed and cited the reports of four independent physicians to ground his conclusions. (*See* R. 20-56.)

[5] Plaintiff also incorrectly argues that the ALJ erred by failing to articulate the credibility factors in 20 C.F.R § 404.152. To the contrary, ALJs are merely required to minimally articulate their credibility findings, which is exactly what the ALJ did here. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

9

For example, Plaintiff testified that he experienced intense pain every day, yet he reported only dull pain to Dr. Noren. He also testified that he could not sit in a chair for very long, whereas Dr. Noren and the two CEs found otherwise. None of these reasons is patently wrong, and the Court therefore affirms the ALJ's credibility finding.[6]

Ultimately, the Court is mindful that Plaintiff continues to suffer from knee pain, and that the above inconsistencies do not render his testimony completely unbelievable. But to be disabling, pain must be so severe, by itself or in conjunction with other impairments, that it precludes any substantial gainful employment. *See* 20 C.F.R. 404.1529. Plaintiff's slight credibility flaw cuts against such a finding, especially when considered with the opinions of four independent medical professionals, all of whom opined that Plaintiff could perform sedentary work, notwithstanding the indisputable existence of his pain. In the end, the ALJ resolved this conflict against a finding of disability, which is supported by substantial evidence in the record. Therefore, the Court affirms the ALJ's decision in its entirety.

---

[6] To Plaintiff's credit, there are aspects of the ALJ's credibility finding that are lacking in support, such as the ALJ's insistence that Plaintiff's treatment has been somewhat conservative for a person alleging total disability. However, these deficiencies are eclipsed by the ALJ's other, valid reasons for discrediting Plaintiff's claims of pain.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 24], and grants the Commissioner's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, [Doc. No. 33].

**SO ORDERED.**                           **ENTERED:**

**DATE:     May 7, 2015**                 _____
                                                **HON. MARIA VALDEZ**
                                                **United States Magistrate Judge**